I have our second case and last of this morning. Number 21-2087, Field Intelligence, Inc. versus Xylem Dewatering Solutions, Inc. Mr. Prang and Mr. Frankel and Mr. Prang, whenever you're ready. Thank you, Your Honor. May it please the court. Good morning. David Prang with Robbins Kaplan representing Xylem Dewatering Solutions, and I'd like to reserve three minutes for my rebuttal. That's fine. Thank you. The district court. Let me go back and see how we got here. It looks as if there was a complaint filed with respect to the 2017 agreement, the Subscription Services Agreement. And there was an answer to an interrogatory that nonetheless suggested that there was a breach of the non-disclosure 2013 agreement, which was not mentioned in the complaint. And obviously, that invited an arbitration request by your client. And it further invites Field Intelligence to argue that the 17 agreement supersedes. Is that how we got there? Yes, Your Honor. That is a good summary of how we are. And then the question is, who gets to decide this? Because we're, this is a, somebody once said a nesting issue, it would be an incredibly difficult law school exam question with supposedly a simple set of facts. It is. And the district court erred in finding that it itself decided the issue of arbitrability. When there is an initial contract, which is the 2013 agreement between the parties that the parties do not dispute existed, and that included an arbitration provision. And that ultimately also included delegation of arbitrability to the arbitrator to decide jurisdiction of the arbitrator. And then what we have as many years forward, there is there is this dispute and a claim of supercession of the of the 2013 agreement by the 2017 agreement. And what supersede means? Does supersede mean that the 2013 agreement goes away like it never happened? Does supersede mean that as of whatever the effective date is, April 2017, the new one kicks in for all disputes after that? Does it mean it kicks in for all disputes involving a claim under the 2017 agreement? Or does it also kick in for for disputes that involve an evidentiary matter that's under the 2013 agreement? I think it's hard to figure out what it means. Even we got a different question whether in fact it superseded. But if it were to supersede, what would what would how do you read the the supercession? If if the 2017 agreement were to supersede the 2013 agreement, what is necessary is to look at the language of the 2017 agreement to see what the parties put out in there about the scope of purported supersession. In the in the 2017 agreement, there is not, for example, a broad complete merger clause that addresses the party's entire agreement. In fact, it's much narrower than that because it only indicates that it relates to the the the subject matter of the 2017 agreement. And so in terms of the super, if there is a supercession, and we do not believe that 2017 agreement supersedes the 2013 agreement, you know, it only applies to certain portions of the party's relationship going forward. We haven't talked much about the effective date here. I mean, the effective date provision says effective and in force as of April 14, 2017. So we have to read that together with this bit about supersedes prior agreements. And this is with respect to its subject matter. So is your argument one that things that happened before the effective date aren't covered? Or is it that these are different subject matters? Or is it both of those? It's both of those. I mean, events that occurred that are before the effective date of the 2017 agreement are covered by the 2013 agreement. That's because there's no language in the 2017 agreement that indicates it's retroactive. And that's it's something that we briefed in our supplemental briefing. In general, what would happen in general rule is, is that if there's multiple agreements that control a party's relationship, and there is a dispute that the conduct and that's the and that is the contract that governs only if the superseding contract is retroactive. And that's based in New Jersey law where there has to be either subjective intent of the parties, which isn't here, or there has or it has to be based on the the four corners of the agreement, the objective terms, then then there may be retroactivity applied on a term by term basis. But here that's not the case in the 2017 agreement. It doesn't say when you when you look at the for to determine whether there's clear and unmistakable evidence of the intent to delegate arbitrability to an arbitrator. Do we look to the 2013 agreement? Or do we consider both the 2013 and 2017 agreements? This court should should look to the 2013 agreement. And the 2013 agreement is an admitted agreement between the parties that existed, which included both the arbitration provision and a delegation based on the plain language of that agreement, as well as by incorporating the triple A rules. What happens is while there is this 2017 agreement that is that is asserted to be superseded. What's important here is in order to give is to give effect to both agreements and not to start at the second one address that that addresses the purported supersession but start at the first agreement between the parties which both parties admit exist and is enforceable up until that time, but what am I to make of the 2017 agreement where it says this agreement constitutes the entire agreement between the parties with respect to the subject matter, and maybe maybe the subject matters are different but and supersedes which I understand to mean supplant any and all prior or contemporaneous understandings or agreements, whether written or oral so time wise is prior and it can be written or oral. Why does that not relevant for our consideration today? It's not relevant based on the, the, the other purpose that is that is instructed by the Henry shine case the Supreme Court case that says that the parties that the court should give intent to the parties agreement concludes the the clear and unmistakable delegation of of addressing issues of which supersession is one of them. As in the case, the, the third that Third Circuit opinion equated supersession with termination. And in the 2013 agreement within that within that arbitration clause it indicates that the arbitrator would also address, not any dispute but also termination of that agreement. And so, the first intent of the parties was that an arbitrator ought to consider that issue. And then the second one. Excuse me. Once you finish that I asked follow in that, while there is the second agreement. It's the, the, the instruction or at least the line of Henry shine as well as the, the, the Fifth Circuit are, are, excuse me the Fifth Circuit opinion of a year, which addresses a similar situation where there are multiple contracts at issue one which may supersede another, and that ultimately the Fifth Circuit found that because there is a delegation within that agreement within the first agreement, where there is an arbitration clause and a delegation of authority to the arbitrator. It's for the arbitrator to decide first on what would happen to that first agreement in view of subsequent agreements that may or may not supersede the first agreement. Part of why this case to me is so interesting is I used to do in another life, a lot of drafting. And I used to when I would lecture was saying, do not ignore the quote boilerplate close quote of agreements of which a zipper clause is considered part of it. So oftentimes if I really wanted to overrule something, or make sure that the slate was wiped clean, you would expressly refer to a prior agreement. So what if the 17 agreement contained a provision that states as follows. This contract expressly supersedes the 2013 nondisclosure agreement, and the arbitration provision contained therein. And in all disputes between the parties must be brought in court. 17 agreement. What would you say that to that, in that hypothetical situation, if there is the additional language that is expressly identifies the 2013 agreement is being superseded, then the 2013 agreement shouldn't apply. I think there's another line of cases that has been cited by my friend of the court for their position, which is that if you have this merger provision, that is it, and it extinguishes the arbitration clause. But the or they contemplate that there is going to be another agreement. It's flex, I think it's the flex of all case that that has a specific release of the earlier agreement. This is not that the 2017 agreement here, it's not the case. This has a merger provision that is limited in its form and effect that only addresses the the subject matter of the 2017 agreement. And so it remains open that there is that there is if the 2013 agreement which addresses different subject matter and which is addressed in our brief, when it about the supersession issue, that these two, these two agreements address very different things. The 2013 agreement addresses an earlier point in time of the party's relationship, where what they were it is involved in the exchange of confidential information or in order to develop a product, that product being in part being the, the hardware units that are at the heart of the underlying case. The 2017 agreement is very different and addresses the provision of services in terms of the transmission of data and the display of data, something that is different from the hardware units. And within the parties, within the party's relationship, and as detailed within our briefing, there's a third set of contracts that actually does address the the the ownership and the IP of the hardware units. And those are the terms and conditions. As of now, there's been no complaint filed in connection with the 2013 agreement. Is there? There is no complaint that has been filed in the district court addressing the 2013 NDA. The 2013 and the 2013 NDA is the subject matter of the of the of the arbitration, because the scope was raised and because there were allegations of breach that were made by interrogatory answer in December 2020, which is approximately one year later into from when the case was initially filed. So I think we agree that the key here is was the tent with respect to arbitration. Is that correct? I'm sorry, your honor, I missed the key here. What was what was what were the party's intent with respect to arbitration? In other words, what was the intent with respect to whether the 2013 agreement remains extent? And you're saying the intent isn't clear and unmistakable. And it's not the same subject matter, but isn't still the key. What is the party's intent? One key is what is the party's intent when you have to look at who decides, I think. But there is another aspect to it, which is in addressing this issue of retroactivity, that you still have the 20, you still have this 2013 agreement and the and the arbitration addresses expressly the time period between 2013 and 2017, where the only agreement that we're addressing at this appeal today is the 2013 agreement controls. And so in that regard, under under law that is that is identified in Jaluti at at 251 to 252, as well as several district court cases that illustrate illustrate the point that the contract, the contract that governs the gut is the one that was enforced at the time of when the issues arose. And the only of the 2017 agreement that would be retroactive. Your Honor, I've gone about 14 minutes. That's fine. We'll get you back on rebuttal. Another problem. You're, you're, you're on our time. So let's hear from Mr. Frankel, then we'll get you back on rebuttal. Unless my colleagues have any further questions. I have no further. Morning, Your Honor's may please the court. Good. I'd like to start with a very important fact here that there's been no claim asserted for breach of the 2013 agreement. But this is a this is an important question. Why is the arbitration requirement limited to a claim of breach as opposed to one that involves evidence from the 2013 the conduct of the 2013 agreement? What what provision says that we shouldn't apply the 2013 arbitration provision to do a claim that involves it even if it's not a breach of it? But I have two, two, two answers to that question, Your Honor, the first is the 2017 agreement says that any claim arising under concerning it has to be litigated in the in the New Jersey courts. Let me know which provision are you talking about? I've got the that's the 2017 agreement, right? I'm looking at the 27. It says this agreement should be governed any action under or concerning this agreement shall be brought exclusively in a state or federal court in Jersey. So paragraph 11 B. Yeah. And and, you know, clearly a claim for breach of the 2017 agreement arises under but also it concerns the 27 the 2013 NDA has no relevance to anyone in this world, other than as it relates as evidence concerning the 2017 agreements breach. That's the only reason the parties care about it. There's not some independent cause of action under the 2013 NDA and the copying at issue here. And the theft of trade secrets occurred after the execution of the 2017 agreement. Can I just just ask a question back to my initial recitation of what I understood the facts to be to your opposing counsel? The they send out an interrogatory and saying, are you in any way relying in effect on the 2013 agreement and you come back and say, even though your complaint relates to the 2017 agreement, you come back and say, oh, we think there's been a breach of the 2013 agreement. Well, that it that'd be crazy not to seek arbitration in light of what that interrogatory answer said we wouldn't even be here if you had just said nothing. Why did you make that particular answer? And I realized in your supplemental briefing that you really try to work around that. But you got to tell me I don't get it. Excellent question, your honor, as they all are, of course. But this one, I think, is no, I've asked some stupid ones. Don't worry. You know, field intelligence has repeatedly clarified since it served that interrogatory what its position is. For example, it appendix 430 field intelligence's breach of contract claims based on Zion's breach of the 2017 agreement, not the 2013 NDA. Field intelligence relies on the 2013 NDA as evidence, not as the basis for an independent cause of action. Okay, so why isn't the right answer, then, that all the cause of action itself gets litigated in New Jersey State Court, as paragraph 11b says, but then this evidence, it has to look to what an arbitrator under the 2013 agreement decides as to whether, in fact, there was misconduct or a breach in that period and under the 2013 provisions? Two reasons on that point. First, that would be making new law. Neither party has cited a single case where that has happened. And second, the superseding part of the 2017 agreement. Every single case that Zion has cited, to your honors, where there's been an earlier agreement and a later agreement, and there was a finding that the dispute is subject to the dispute resolution provision in the earlier agreement, was based on the cause of action being under the earlier agreement or the breach occurring during the period of time when the earlier agreement was in effect. Okay, there's no problem with doing that, right? If there's a breach of an earlier agreement, you could say, like, fine, I want to bring a RICO claim now, but my predicate acts involve these earlier. Maybe you go back and litigate, was there, in fact, a breach or a tortious interference with contract or something else under that first agreement? So it can happen. You're just saying that's not what happened here. Well, for two reasons. First of all, it's not what happened here. And second, there's the superseding effect. Okay, but here's the word supersede. Latin root, sed, to sit, super, on top. As Judge Ambrose said, most dictionary definitions define it as supplant, replace, take the place of. It doesn't normally mean void ab initio. I mean, there's a suggestion in blacks, but that's not the normal meaning that you act as if the first agreement never took place or was invalid. But then we have to decide at what time does it replace it? How does it replace it? It replaces it going forward as to the subject matter of the 2017 agreement. But this is a different subject matter. It's hardware software, but it's also you're looking at the conduct under the 2013 agreement. So why don't we decide the pieces of that are about the 2013 agreement separately because you didn't contract for voiding the earlier agreement, abolishing the 2013 agreement, acting as if it never was in effect. You superseded it. Right. I have to agree with Judge Ambrose reading of the merger provision. It goes beyond just saying superseding. It's a supersedes any and all prior or contemporaneous understandings or agreements. I mean, it doesn't say going forward, this is what we'll control. But it does say with respect to its subject matter and its subject matter is limited by the effective date provision, April 14th, 2017. The subject matter of the agreement, it has been found as a matter of fact includes the hardware units that this entire case is about. That's a factual finding from the district court based on consideration of declarations from witnesses, contemporaneous documents, parole evidence. Okay. But we got to decide how it modifies the rest of that merger provision. The subject matter of the, I mean, the breach of, just to take a step back, the cases about breach of contract and the theft of trade secrets that occurred after the execution of this agreement. There can be no question that that those claims are included within the subject matter of this agreement. Xylem doesn't dispute that. Xylem is saying that the activities prior to the execution of this agreement might show that field intelligence didn't do enough to protect its intellectual property rights. The relevance of the 2013 NDA is only to show that field intelligence did in fact, is a fact, do enough to protect its intellectual property rights, such that its claim for breach of the 2017 agreement has not been waived. So at a minimum, regardless of the exact overlap and Venn diagram between the two agreements, the subject matter of this case concerns this agreement and it concerns a claim that arises under this agreement. Xylem has not suggested for a second that the 2013 agreement is not, doesn't concern the claims that are being asserted here. And in fact, it admits in its papers that the only reason it's bringing this arbitration is to try and get an evidentiary finding that help it defend against the claims that have to be litigated in New Jersey. There's not a single case that anyone has found or cited where a claim under a district court was referred out to arbitration for an evidentiary finding. That's completely antithetical to the purpose of arbitration, which is to be a streamlined nonjudicial alternative to district court litigation. I mean, you know, it's very important to consider the equities here. And I do ask the court to consider the waiver argument because it's, you know, this is a special case. I mean, I don't, I don't, I think the waiver arguments not going to go very far. Is it your position, you still have rights under the 2013 agreement? No, the 2013 agreement has been superseded. The relevance of the 2013 agreement is only is a factual input to the claims asserted under the 2017. But let's say some accountant discovers that they owe you a million dollars based on some, some kind of a balanced check or some, some undisclosed liability. Or disclosure of proprietary information. Right. You disclose, they disclose some proprietary information of yours in 2015 or now. You can sue under that 2013 agreement for a breach of the 2013 agreement for disclosing the proprietary information then, even if that just happens to come to light now, right? You know, that's a different hypothetical than the facts you have here. I would, you know, feel intelligence position is that the 2017 agreement has replaced and superseded. Every now and then you have to answer the hypothetical. What, what, what would the answer be? The answer would be the claim would be asserted on the 2017 agreement because it's replaced the 2013 agreement. So I can't be right. Yeah. I mean, that certainly goes counter to what was claimed in the interrogatory answer. Completely. The interrogatory answer was, was not the response in the interrogatory. And again, it's been clarified many times in the briefing that followed is that the 2013 agreement was factual evidence of the reasonable efforts that field intelligence made. I thought that was going to be your argument that a claim actually under the 2013 agreement could still be made because it's a, it's a breach pre 20, the effective date, et cetera. But just use of evidence is different. I would think that's a more tenable argument for you. That, that, that, that in, in this, in the facts here, the non-hypothetical case, that's exactly what the argument is that the, the, there is a difference between arbitrating a claim and arbitrating a factual question. There is your honors would be making new law to find that in a district court case for claims that no one, everyone agrees that the claims asserted in this case are non arbitrable. They're not subject to arbitration to see it. This would be the first case to hold that for, it's been more than a year that the case has been on hold and that it should continue to be on hold for an arbitrator to issue an advisory opinion about the relevance of factual evidence. And I understand you're not very interested in the waiver issue, but, you know, judge Rodriguez decided the interpretation of 2013 NDA at the beginning of the case. He decided that it covered the field units, that it was evidence that field intelligence had protected its IP. That's the exact same issue that Xylem, a year after judge Rodriguez made his findings, wants to now go back, go to an arbitrator and have, have a, an arbitrator issue an opinion on that. And then what would happen? It's unclear. If the arbitrator disagrees with judge Rodriguez, does he have to follow the opinion of an arbitrator on, on its impact on a claim? It's not subject to arbitration. I mean, that can't be the result here. That's, that's turning arbitration from an efficiency tool into a tool for obstructing the orderly proceeding here. And it's not, this is not an, this is not an ambiguous contract. I mean, the party said for the subject matter of this case, which is the only claims being asserted, the breach occurred after the 2017 agreement went into effect, that this is the agreement that controls and disputes need to be litigated in the courts of New Jersey. Did Xylem didn't waive its right to arbitrate disputes arising from the 13 non-disclosure agreement, did it? That's, that's our position. They did. But don't you have to invoke judicial process with respect to claims arising from that? And I don't know of anybody at this point triggering judicial process with respect to the 2013 NDA. But by way, I don't mean that Xylem executed some waiver form and said, well, you know, we, we hereby agree we're not going to arbitrate. What the waiver argument is that this exact issue to the letter was litigated by the parties early on in the case. I mean, the only reason the Xylem even filed his arbitration demand was because of the answer to the interrogatory. There is nothing else that indicates otherwise. Well, I, I, with, with respect to my friends on the other side of the case, I believe they filed it as a way to stall the progression of the case. There's nothing new in that NDA to the, the trade secrets, the, the field units was decided at the onset of the case. Xylem filed a motion to dismiss. Field intelligence moved for preliminary injunction. Xylem made the argument that the 2013 NDA permitted it to copy and reverse engineer the field units and judge Rodrigue, field intelligence disagreed. Judge Rodrigue is found against Xylem. Now they're trying to get a second bite at the apple. My guess is if I were in Xylem's position, I would say to myself, okay, you know, first question, do we just let it drop with respect to the 13 agreement? Or do we try to find out if they're actually claims that there might be a breach of it? Well, we might want to at least ask the question because then it would at least give us the opportunity to say we should arbitrate rather than be in court. And okay, let's just ask the question. Let's see if they are going to fall into that trap. Sure enough, field intelligence says, yep, there were violations, breaches of the 13 contract. Now you haven't sued yet, but then if you're Xylem, you're going, okay, the door's open. I can ask for arbitration. Isn't that, isn't if you're suggesting it's a, it's an attempt for a gotcha moment, I agree, but field intelligence has been very clear and clarified its position that it is not asserting the 2013 NDA is anything other than evidence in this case. It's not seeking a claim for breach. It has not asserted a claim for breach. It will not assert a claim for breach based on anything known to it at this time. If that were to happen in the future, then Xylem could argue that this hypothetical claim, that's not a certain subject to arbitration. And that would get into a different question about retroactivity. The only breach that's alleged here and the misappropriation occurred after the entry of the 2017 agreement. Again, I mean, the, the, the period of time, the only relevance of this 2013 to 2017 period is does Xylem have a defense to breach the contract and a defense to theft of trade secrets? When I go back to judge Beavis's question, if in the development of this product, there was a non-disclosure agreement signed and you discover now and say the discovery rules in full effect in 20, that in 2015, there was a significant breach of the non-disclosure agreement with respect to development. Are you saying that field intelligence would not have an argument for a breach of the 2013 NDA? Field intelligence would be able to argue that Xylem breached the 2013 NDA, but that claim would be subject to the 2017 agreements forum selection clause because it replaces, supersedes the prior agreement as to its subject matter. And the subject, the reverse engineering of the field units, Xylem cannot argue and has not argued that that is not part of the subject matter of the 2017 agreement. That's not an issue that's ever arisen or that we have to deal with today, right? Well, I don't think you need to deal with it today, your honor, because the breach that's alleged here occurred after it, during the operative period of the 2017 agreement. In this case, as you said, we're dealing with later issues. And so the hypothetical might be an entirely different case, in which case you'd have to consider whether it should be arbitrated or go to court, but we don't have to deal with that issue today. I agree a hundred percent, your honor. Any further questions of my colleagues? Okay. If not, thank you very much, Mr. Frankel. Thank you. Hopefully next time we'll be in person. Amen. Amen. Yes. From your lips to God's ear. Mr. Prang? Briefly, I want to touch on a few points. Most of the discussion of my friend of the court was about this breach of contract. There's another claim that is at issue in the district court case, which is this trade secret misappropriation, which requires that a party has to show that it takes reasonable measures. Now, what we've heard so far, or what I have heard, is that the 2013 agreement is only a factual piece, but it goes beyond that, which is, what is the scope of the 2013 agreement? And that brings it to the need to arbitrate it, because we look at this period from 2013 to 2017, where the 2013 agreement is in force, and what is occurring there, and does it protect the hardware units that are at issue? If it does not, or if it doesn't cover those hardware units and there is no breach, it has a direct relation to the claims that are at issue in the district court. I think the other point I'd like to emphasize is that there is a question of, Your Honor, do you still have rights under the 2013 agreement? The answer from Xylem's perspective is yes, because it's a bilateral agreement addressing the exchange of information. The 2017 agreement isn't a bilateral, doesn't address this bilateral exchange or the protection of information that is Xylem's. And so what that means is in looking at the rule of whether there is a superseding contract, the two contracts are not so distinct that they can't be read together. They can be read together. They address different points of time of the party's relationship, and that the 2013 agreement does continue to exist and apply. I think the final point I think is worth making is that this issue right here is that there's nothing new in the interrogatory response, but that really does not compare to simply the record, which is in the record that the 2013 agreement is not in the complaint. And when it got to the preliminary injunction and the motion to dismiss stage, I hear this argument that it was fully briefed or fully addressed by the district court, but it was not. In looking at what is actually in the record, it's very small snippets addressing 2013 NDA and passing only to describe the relationship of the parties before getting to the 2017 agreement. With that, Your Honor, otherwise I commit the rest of our arguments that are in the briefs, unless the panel has any other questions. Thank you very much. Thank you to both counsel for very well presented arguments, and we'll take the matter under advisement. I would ask counsel if you would have a transcript prepared of this oral argument and to split the costs evenly, if you would, please. Yes, sir. Thank you. Thank you, gentlemen. And may the next time be in person. I agree with that. Thank you. Thank you.